**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND**

**CIVIL ACTION NO. 06-142-DLB**

**JORDAN ICE COMPANY, INC., ET AL.**                                                           **PLAINTIFFS**

**vs.**                          **MEMORANDUM OPINION & ORDER**

**GRANGE MUTUAL                                                                                   DEFENDANT
CASUALTY COMPANY**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**I.     INTRODUCTION**

This matter is presently before the Court upon Plaintiffs' Motion to Remand (Doc. # 4). Defendant has filed a Response (Doc. # 13), to which Plaintiffs filed a Reply (Doc. # 14). Therefore, the Motion is now ripe for the Court's review. The Court finds that diversity jurisdiction has been established pursuant to 28 U.S.C. § 1322(a), as complete diversity exists among the parties and the jurisdictional amount-in-controversy requirement has been satisfied. However, for reasons set forth herein, the Court declines to exercise discretionary jurisdiction over this declaratory judgment action under the Declaratory Judgment Act (DJA), which in itself "does not create an independent basis for federal subject matter jurisdiction." *Heydon v. MediaOne of Southeast Mich., Inc.*, 327 F. 3d 466, 470 (6th Cir. 2003); *see also* 28 U.S.C. § 2201.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

There are two actions relevant to the determination of jurisdiction in this matter. First, the underlying tort action, styled *Madalene Marcum v. Jordan Ice Co., Inc. et al.*

(hereinafter "Marcum action"), provides the backdrop for the instant action. The Marcum action arose out of an incident that occurred on or about August 2, 2005 at a Louisa Foodland store, where it is alleged that an employee of the store (employed by Jordan Ice Co., Inc.) was transporting ice in a shopping cart and struck Ms. Marcum causing numerous injuries with varying degrees of severity. The tort action was filed in Lawrence County Circuit Court in August of 2006 and seeks an unspecified amount of damages. Both the plaintiff and defendant in the Marcum action – Ms. Marcum and Jordan Ice – are Kentucky residents and the complaint does not raise issues of federal law. Therefore, at present posture, federal subject matter jurisdiction does not exist in the Marcum action.

The second case, which is the instant action, styled *Jordan Ice Co., Inc. et al. v. Grange Mutual Casualty Co.* (hereinafter "Jordan Ice action"), was originally filed in Greenup County Circuit Court in September of 2006 as a "Petition for Declaration of Rights." The petition alleges wrongful denial of insurance coverage on the part of Defendant Grange surrounding the underlying tort action. Plaintiffs seek a declaration of rights with respect to coverage for the Marcum action – in the form of both litigation defense and general indemnification if liability is established – under the terms of the several liability insurance policy that Plaintiff Jordan Ice purchased from Defendant.

In October of 2006, upon Defendant's Notice of Removal (Doc. # 1), the Jordan Ice action was subsequently removed to this Court on diversity grounds. Plaintiff now challenges the removal and requests remand.

### III. ANALYSIS

**A.     Diversity Jurisdiction: Amount in Controversy**

In the absence of federal question jurisdiction, the jurisdictional basis for removal in this matter must consequently stand on diversity jurisdiction alone.  To that effect, Federal district courts have original jurisdiction "of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states."  28 U.S.C. § 1332(a)(1).  Correspondingly, any case brought before a state court is subject to removal where the relevant federal court also possesses original jurisdiction over the action.  *See* 28 U.S.C. § 1441(a).  Because Defendant seeks the jurisdiction of this Court upon removal, as opposed to an original federal filing by Plaintiffs, Defendant bears the burden of demonstrating that complete diversity exists among the parties and that the amount of controversy exceeds $75,000.

Following the resolution of an initial dispute concerning the issue of party diversity, Plaintiffs have now stipulated that complete diversity exists.[1]  Nevertheless, Plaintiffs maintain that Defendant has not established an amount-in-controversy in excess of $75,000.  Under traditional analyses, district courts consider "the amount alleged in the complaint and should not dismiss a complaint for lack of subject matter jurisdiction 'unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount.'"  *Massachusetts Cas. Ins. Co. v. Harmon*, 88 F.3d 415, 416 (6th Cir. 1996).  However, because the instant action is for a declaration of rights only, the valuation

---

[1] The initial dispute arose from an apparent scrivener's error on the Civil Cover Sheet whereby Plaintiff State Farm's Illinois residence was listed as Defendant Grange's residence by mistake.  As is stands, Plaintiff Jordan Ice is a resident of Kentucky, Plaintiff State Farm is a resident of Illinois, and Defendant Grange is a resident of Ohio.  Thus, complete diversity exists.

analysis proceeds somewhat differently.

Where a party seeks a declaratory judgment, "the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation." *Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 399 (2d Cir. 1975). In other words, "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). Accordingly, in this declaratory and removal context, Defendant has the burden of establishing that there is a "substantial likelihood" or "reasonable probability" that the true amount in controversy – i.e. the "object of the litigation" – exceeds the $75,000 jurisdictional threshold. *Gafford v. General Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993).

The ultimate point of contention among the parties is what constitutes the true "object" of Plaintiffs' declaratory action and how that object is to be valued. Defendant argues that because Plaintiffs are seeking a declaration as to both Grange's duty to defend and duty to indemnify regarding the underlying tort action, the Court must therefore look to the Marcum action to measure the potential damages at stake in the determination of whether the amount in controversy threshold is satisfied. Plaintiffs argue, however, that the "object" question must be resolved without reference to the underlying tort action, at least with respect to the potential liability and coverage issues, because the sole purpose of this declaratory action is to resolve Grange's duty to defend.

Ergo, while Defendant contends that the value of Plaintiffs' declaratory action satisfies the jurisdictional threshold because the potential damages extending from the underlying tort action are in excess of $ 75,000, Plaintiffs maintain that only defense costs

are relevant and that such costs will fall short of the $ 75,000 mark. Plaintiffs' interpretation as to the object of its own litigation is untenable.

It is true that, because the instant action does not question the validity of the insurance contract in its entirety, the policy coverage limits do not constitute the amount in controversy. *See generally Harmon*, 88 F.3d at 415. Nevertheless, in disputes involving the applicability of an insurance policy to a particular occurrence, the amount in controversy is the value of the underlying claim. *See* 14B Charles Alan Wright, et al., *Federal Practice and Procedure* § 3710 (3d ed. 1998); *see also Sears v. American Mutual Liability Ins. Co.*, 372 F.2d 435 (7th Cir. 1967). Accordingly, the amount in controversy in an action. such as the instant case. where an insured seeks a declaration that the insurer has a duty to indemnify and to defend *is the value of the underlying tort action.*

Based on the representations of Defendant as to the potential damages at stake in the Marcum action, and the lack of objective evidence proffered by Plaintiffs to the contrary, the Court is satisfied that Defendant has carried its burden of establishing that there exists a reasonable probability that the amount in controversy, as measured by the value of the underlying tort claim, exceeds the $ 75,000 jurisdictional threshold. *See Gafford*, 997 F.2d at 158. Therefore, pursuant to 28 U.S.C. §§ 1332(a) and 1441(a), this Court is vested with diversity jurisdiction. However, despite this determination, the Court declines to exercise its discretionary jurisdiction over Plaintiffs' declaratory judgment action for the reasons set forth below.

**B.     Discretionary Jurisdiction Under the DJA**

Under the Declaratory Judgment Act, federal courts have discretion in deciding whether to hear an action seeking only declaratory relief. *See* 28 U.S.C. § 2201 ("In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.") (emphasis added); *see also Grand Trunk Western R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 325 (6th Cir. 1984). As the Supreme Court explained in *Wilton v. Seven Falls Co.*:

> Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. . . . The statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface. We have repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.' When all is said and done, we have concluded that the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teaching and experience concerning the function and extent of federal judicial power.

515 U.S. 277, 286-87 (1995) (internal citations omitted).

In evaluating the propriety of exercising jurisdiction in declaratory judgment actions, the Court must consider five factors:

> (1)  whether the judgment would settle the controversy;
>
> (2)  whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
>
> (3)  whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";

>   (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
>
>   (5) whether there is an alternative remedy that is better or more effective.

*Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000) (internal citations omitted); *see also Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 813 (6th Cir. 2004).  Although not briefed by the parties, the Court will nevertheless appraise the propriety of jurisdiction in this matter under the preceding criteria.

Looking to the first two factors, each of which involve questions of judgment efficacy, it is presumed at this very early stage that, although the record is devoid of any merit-based evidence, a meritorious disposition of Plaintiffs' action would serve to both settle the instant controversy and to provide clarification as to the legal relations at issue.  In other words, assuming the Court would ultimately be able adjudicate the matter in favor of one party – i.e., coverage or no coverage – this determination would dispose of the declaratory action and would define the coverage status of the underlying tort action.  While unnecessarily affording Defendant the benefit of the doubt on these points, the Court finds that the prospective judgment in this matter would act to resolve the coverage controversy; therefore, the first and second factors weigh in favor of exercising jurisdiction.

Moving past the third factor[2] and on to the fourth and fifth factors, the Court must

---

[2] The Court does not individually address the third factor because the record does not indicate that Defendant has attempted to circumvent state jurisdiction in this matter in favor of the federal courts with any ulterior motive in mind.  The Court will again afford Defendant the benefit of the doubt in this regard and will not presume bad faith on Defendant's part.  Regardless, depending on how the factors are weighed together by any given court, this finding could support the exercising of jurisdiction or merely not weigh against remand.  The latter appears most logical.

consider the impact that exercising jurisdiction would have with respect to principles of federalism in the desire to avoid encroaching upon the state court jurisdiction where improvident, especially where the remedy offered by the state court would be more efficacious.  To determine whether the exercise of jurisdiction would increase the friction between federal and state courts, the Sixth Circuit considers three additional factors:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Bituminous*, 373 F.3d at 814-15 (citing *Scottsdale*, 211 F.3d at 968).

First, the underlying factual issues in the Marcum tort action would appear to be vital to the determination of the instant action because Plaintiffs' declaratory judgment action seeks resolution of a specific coverage dispute, namely the Marcum action.  Presumably, therefore, and in the absence of any factual evidence to the contrary, the question of coverage as to the underlying incident is more than simply germane to the incident itself, but rather the two actions appear necessarily intertwined.  At this point in the proceedings and as the record currently stands, the Court finds that the two actions are sufficiently related as to weigh in favor of declining to exercise discretionary jurisdiction on this partial factor.

Second, the instant declaratory action involves the same underlying factual issues from the Marcum tort action pending in state court.  Furthermore, the parties do not contend – and the record does not suggest – that federal law is implicated in either action,

which suggests that both actions are the subject of state law "with which the Kentucky state courts are more familiar and, therefore, better able to resolve." *Bituminous*, 373 F.3d at 815. Consequently, even though the Marcum action is now pending in a different county than the county of removal in the instant action, the Kentucky courts are still in "a better position to evaluate the factual issues because they [rest] solely on state law with which the state courts are better acquainted." *Id.* at 816.

Third, removal was effectuated in this case pursuant to this Court's diversity jurisdiction and neither federal common law nor federal statutory law apply to the substantive issues of the case.[3] Additionally, the declaratory action directly and solely implicates Kentucky law on insurance contract interpretation, which weighs against federal jurisdiction. Moreover, from a public policy perspective, "states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 279 (6th Cir. 1990).

Finally, as to whether remand to state court would constitute a "better" and "more effective" alternative under the fifth factor, "[t]here is no reason to suppose that the alternate remedies available in state court would not adequately protect [Defendant's] interests." *Bituminous*, 373 F.3d at 816. As evidenced by Plaintiffs original filing of the declaratory action in state court, Kentucky does provide an adequate procedure for a declaration of rights action and given that the case involves only questions of state law, the state court would be "in a superior position to resolve the case." *Id.* (citing *Mercier*, 913

---

[3] Although the permissive jurisdiction of this Court to hear a declaratory action is pursuant to federal statute, the DJA "does not create an independent basis for federal subject matter jurisdiction." *Heydon*, 327 F. 3d at 470.

F.2d at 278-79); *see also* Ky. Rev. St. § 418.040. As the Sixth Circuit explained in *Am. Home Assur. Co. v. Evans*:

> We question the need for federal courts to issue declaratory judgments in such cases where a state court has already accepted jurisdiction over the subject matter of the lawsuit. We also question the need for such declaratory judgments in federal courts when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner.

791 F.2d 61, 63 (6th Cir. 1986).

In sum, the final tally does demonstrate that the first two factors weigh in favor of exercising jurisdiction, with the third factor either inapposite or slightly in Defendant's favor. However, the fourth and fifth factors, which take into account the option of remand to state court and "considerations of comity," weigh heavily against federal jurisdiction in this matter. *Id.* Under these circumstances, therefore, the last two factors predominate and the Court declines to exercise jurisdiction over this action for declaratory relief.

## IV.   CONCLUSION

There is not, of course, "a per se rule against exercising jurisdiction under the DJA in actions involving insurance coverage questions." *Bituminous*, 373 F.3d at 812-13. "Such actions for an advance determination in the nature of an advisory opinion should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem." *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir. 1986). Otherwise, in addition to the ubiquitous federalism concerns, "confusing problems of scheduling, orderly presentation of fact issues and *res judicata* are created" by this Court accepting jurisdiction over a declaratory judgment action that arose from, and is inexorably tied to, an underlying tort action fundamentally

indigenous to state court. *Id.*

Accordingly, the Court will abstain from exercising discretionary jurisdiction over the declaratory judgment action in favor of dismissal without prejudice to being re-filed by Plaintiffs in state court.

In accordance with the foregoing analysis, **IT IS ORDERED** that:

(1) Plaintiffs' Motion to Remand (Doc. # 4) be, and hereby is, **DENIED**; and

(2) Notwithstanding its ruling on the pending motion, the Court will abstain from exercising permissive jurisdiction and, accordingly, Plaintiffs' action is hereby **DISMISSED without prejudice** and **stricken** from the active docket of this Court.

This 4th day of December, 2006.

Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\Opinions\0-06-142 - Jordan Ice (MTR MOO).wpd